Good morning, Your Honors. Lisa Basses for Mr. Raygosa-Esparza. The government misconstrues appellant's assignment of error. Appellant does not contend that the polygraph test was admissible to prove that Williams, the confidential informant, was lying. Rather, what is relevant is that a polygraph test was given. In other words, its relevancy is not that the test was scientifically reliable, but that the police, or that the FBI, disbelieved Williams. They gave him a series of polygraph tests, which he failed, and each time he failed them, he changed his testimony in material regards. What is important to you is that the fact of the polygraph test... Pardon? Your concern is just not that they excluded the fact of the polygraph test, but the result itself. Isn't that right? Exactly. My concern is that the issue is one of context. But didn't he admit he lied? He did admit he lied, but I don't believe that that is sufficient. First of all, there were a series of questions that were asked of Agent Ray. There was a question, was there a problem with Mr. Williams' credibility? Well-defined problem. You didn't believe him, correct? No, I didn't. And to your knowledge, the officials at the institution didn't believe him either, right? To my knowledge, it was suspected first. Well, the problem is that gives a false impression to the jurors. First of all... What you want to use this for is to show that the FBI didn't believe a witness. Is that right? Not only that, but also every time he was confronted with his false testimony, he then changed it. Now, the jury was instructed that Mr. Williams... All right. But that still depends on the fact that the FBI didn't believe him and so kept forcing him. But, you know, in other circumstances, I don't think it's usually, for instance, when you have, say, an FBI witness on the stand and he's talking about something the defendant told him, you can't ask him, man, did you believe him or did you think he was lying? That's not the FBI agent's job to determine. It's the jury's job. That's right. But here you want to show that the FBI didn't believe him. Well, here the FBI didn't believe him, but the jury could... How is that relevant, that the FBI didn't believe him? What's relevant is... The jury had plenty of evidence to determine for itself whether or not he was telling the truth. I don't believe that it did. It lacked the necessary context to evaluate Officer Ring's testimony. The reason is that, for that, is that Mr. Williams was a felon. The jury was instructed to take that into consideration in evaluating credibility. So this is completely consistent with Officer Ring's testimony. No, I didn't believe him at first. No, law enforcement didn't believe him at first. The reason they didn't believe him is, number one, there was obviously something suspect. He came to them in December with a report that Mr. Raigosa had approached him about buying drugs. They didn't believe him. Williams then went back in January on two separate occasions and then they wired him off. And the first time they gave him the polygraph test, he failed it. And when he was told that they found him untruthful in material respects, he changed the testimony. They re-administered the test, asked him more questions, he failed it again. And again, he changed the testimony. And I believe what's important here is that without the jury knowing this context surrounding Mr. Williams' statements, they lack the necessary information to evaluate Williams' credibility. It's a far cry from evaluating someone who says, yeah, I initially lied to police officials or Officer Rings who says, I didn't believe him at first, from a situation where every time that scientifically the FBI feels that they need to confront the defendant, scientifically the witness, he fails those exams, and then he changes his testimony in material regards. Now what's also significant here is that there's really very, very little evidence to indicate Mr. Rakos' involvement in this criminal conspiracy. Most of this is furnished by Williams and Williams alone. And Williams' interpretation of my client's role in this conspiracy. He said that it was the defendant who approached him about buying drugs. Now the government in its brief emphasizes that my client was a principal in this, which actually isn't true. It's quite clear from the record that at the most Mr. Rakos' was a go-between, that the person who intended to smuggle these drugs was Velarde. Velarde was in the same housing unit as Williams and as the defendant. Now Williams told officials that he was first to smuggle drugs into the prison. He then went back and obtained the name of Wade, which he passed to the defendant. He also said that there was a conversation where the defendant said, let me know if you want to do it. And there was also a mention of a thousand dollars. But let me know what you want to do. It is so vague as to be meaningless. Now Williams told. Let me know if you want to do it. Is it vague? Yes. I believe so. There was no coded language. There was no other surrounding discussion to indicate a framework for that comment. The government inferred. Well, that's, you could argue on that. Pardon? That'd be part of your argument. Well, the issue is that there wasn't any corroboration. And that's why Williams' credibility was so important to an assessment. He told the FBI that this meant in the context of other unrecorded discussions he had had with the defendant. Let me know if you want to do it. Refer to a drug transaction. Let me know if you want to do it. Could very well refer to a card game. There was nothing else that was recorded in this conversation that corroborated that this conversation concerned drugs. Unlike other conversations Velarde had, which were recorded, where he referred to Mary Jane, the girls. The only evidence that was excluded was the fact of the polygraph. Exactly. And its result. But the the polygrapher's questions and Williams' responses, they were admit, they were, he was cross-examined on those, wasn't he? Well, he wasn't. And then Williams admitted he lied. He wasn't cross-examined on the questions, but he was cross-examined on the fact that he lied. But the problem is, as I said, context is critical in assessing the credibility of the witness. As the Second Circuit said in Cardio, which is cited in Appellant's brief, prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test without which the jury cannot fairly appraise them. To say prejudice can be established by showing only the cross-examination brought out facts tending to discredit the testimony in chief. The trial court has discretion to exclude polygraph evidence. If the polygraph evidence goes to credibility. Flat out. Well, if the polygraph evidence goes to the truth and then the court does a balancing test, is it more prejudicial than probative? Well, the court did the balancing test. Well, actually, it said it found it. I don't see in the record where it actually talked about the factors. But, you know, these polygraph tests, they're not very reliable. What's important, though, isn't the. He did admit that he lied. Your important here isn't the reliability of the test itself. What's important is that law enforcement believed Williams was lying, confronted him with the polygraph test results, which showed he was being distrustful. And then he changed his story. Now, he didn't do this once. He did this multiple times. And this is a far cry from Williams getting on the with the scientific test. And then he backs down. If we didn't have the test, we'd have a false imprimatur of reliability, which is essentially what we have. You've got two felons. You have Williams false imprimatur of reliability, I believe, or credibility. I believe so. You have Williams who's a convicted felon and you have defendant who's a convicted felon. So in a sense, their backgrounds wipe each other out. Williams says, well, they're both convicted drug dealers. One is now testifying for the government. It sounds like he's come clean. It sounds like he's reformed and he truly wants to help that he's been rehabilitated when in fact that's not the case. He's still lying to the FBI under oath. And he admitted he was a liar. He admitted he's a liar. But I think what's important is that what forced him to admit that was being tested by a polygraph. You know, you've covered this completely in your briefs. And we don't really need 20 minutes for this case. Does the court have any questions in particular? I could go into the sufficiency claims, but it well, OK. All right. All right. Thank you very much, Your Honor. And I hope you, I hope you heal well. I hope you heal well. Well, that's very kind of you. Thank you. I just wear this to get sympathy. Good morning, Your Honors. May it please the Court. Sherry Pim for the government. Taking a cue from your questions, I will just address the polygraph issue unless you have any questions about the sufficiency of the evidence. But certainly we think our briefs covered that. With respect to the polygraph, well, the counsel for the appellant stated in the beginning that she thought the government misconstrued their position. I don't think that's the case. Our briefs did address both of the grounds that the district court cited for excluding the polygraph evidence in this case because of the way it was presented to the court at that time. The court excluded it under both Rule 702 and 403, which are independently sufficient. But it was also sort of two separate respects in which it was excluded. The straightforward scientific evidence of the polygraph was excluded. And I don't think there's any dispute here that that was a proper ground to do so. I don't understand the appellant to be arguing that the court should have. I'm sorry. No dispute there. What was the proper ground? That the polygraph evidence should have been excluded just on its face. For example, if the defendant had sought to just introduce testimony from the polygrapher just for itself. As I understand it, what the appellant is arguing is that what was necessary was the fact of the polygraph needed to be introduced to set context here. So the polygraph. To show that it's to impeach, it's really to impeach the witness, that the witness kept changing his story. And the way I read this transcript, you know, I think the district court really misunderstood the basis of the offer. It kept talking about, well, it doesn't meet 702. And 702 has nothing to do with it because 702 only comes into play, as she said, if you're offering it to, you know, the opinion of the polygrapher to prove the truth of the matter, certain opinion, namely that he's a liar. But it's not offered for that purpose. So 702 is completely irrelevant, as I see it. But that's the main basis on which the court excluded the testimony, isn't it? Well, I don't think it's the main basis. I think there were two bases. But the reason I think 702 ---- The polygraph 103 analysis follows on the 702 analysis. That's correct, Your Honor. And should have nothing to do with it. Well, I don't think ---- In fact, you call it an attempt to end run the 702. And it's not an attempt to end run 702. It's for an entirely different purpose. Well, I think the argument has been narrowed a little bit for purposes of appeal. But I think that the 702 argument, well, 702 in and of itself is not relevant. I agree with that, Your Honor, to the issue that's being presented here. But I think the Court's concern and the reason 702 came up was in the context of the lack of foundation here. That ---- Foundation for what? You only need foundation if you're offering it for truth. Well, but you do need it in this respect, Your Honor. If you're looking to have the jury not be misled or confused, 403, while referring, of course, to undue prejudice, also refers to the fact that you have to worry about the jury being misled or confused. And I think that was part of the Court's concern here. By the fact that the Court is ---- What the defense was seeking to do was to simply throw out the fact of a polygraph exam to the defendant on ---- or, I'm sorry, to Mr. Williams on cross-examination without explaining at all how the polygraph exam was administered, without having any testimony from a polygrapher that would explain ---- It doesn't matter. All you're saying is, well, they told you you were lying. Then you change your story, right? The polygrapher said, no, that's not truthful. So you change your story, right? And then he told you again it wasn't truthful. You change your story again. That's all you need. You don't have to show that. In fact, it could have even been somebody who was a, you know, let's pretend polygrapher who did that, right? I mean, I could have gone and said, okay, I'm going to give you a polygraph. And then I said, no, I think you're lying. You better tell me the truth. And even then, it would still be admissible under that theory, wouldn't it? You wouldn't have to show that it's a valid polygraph. To make that same point. Well, like, you know, when the detective says, well, you know, the guy in the other cell told me that you were involved. Even though it's a lie, it doesn't matter. He says, oh, well, then I'm going to change my story. That's all you want to get out, that he changed the story. Well, I think the fact that he changed the story did come out. And I think there's still a concern here with the polygraph, and that polygraph has sort of been, has been recognized. You know, with the limiting instruction, can't you? A limiting instruction may have been able to address that here. But I think you still have a concern, and this, I think, was the district court's concern, in part that the cases that this, from this Court have consistently recognized that polygraph is sort of a buzzword for confusion and danger, for calling it, asking the jury to speculate. But all cases are cases when they're offered for truth of the results. Well, but even in the Benavidez decision, this Court noted that the risk that the jury might give excessive weight, going to your point, of course, that it's being offered for the truth. But also that Court, this Court noted in that case that the trial court will rarely abuse its discretion by refusing to admit polygraph evidence, even if it's for a limited purpose and under limited conditions. And I think that really here is the situation. The Court was confronted with this evidence, which I would submit had really very limited probative value. And on the other hand, there's this danger of undue prejudice, confusion, misleading the jury, when polygraph is mentioned in this case. And it was within the Court's discretion to perform that balancing test, as the district court did, and to exclude the evidence on that basis. What was excluded here was, as has been discussed, just really a very narrow piece of evidence. There was a lot of impeachment evidence that was available for the defense to use in this case. And that, in fact, was used. The witness, Mr. Williams, was a convicted felon serving a lengthy sentence. The defense certainly pointed that out to him. And the sentence was, in fact, for cocaine trafficking. The defense also elicited on cross-examination that Mr. Williams had admitted to trafficking in marijuana while in prison. And he did that even before he had met the defendant in this case. The fact that the FBI and the prison officials didn't immediately believe Mr. Williams is something that was brought out when those agents were examined by the defense. And certainly, as the Court noted in its ruling here, in the transcript, it was available for the defense to question the witness at length or to question the witness to the extent the defense saw appropriate about all of the questions that were asked, all the answers that were given, and the fact that the defense or that the witness, Mr. Williams, had changed his story. All of that was available for the defense. And so in that context, there's really very slim evidence that's being excluded here, namely the fact that some of those questions and answers were asked and given in the context of a polygraph exam. And so in this context, given what the district court was facing here, I think it was an appropriate balancing test that was conducted. The district court gave due consideration to all of the circumstances here and made the call that in this case that evidence should be excluded. And this was, as this Court has also noted in the Hanke decision, this is not evidence, because it was so narrow, that more likely than not would have affected the verdict in this case, given all of this evidence that was available to the defense. So we would submit that this was simply an incremental piece of evidence that was at issue in this case, and it was not essential to the defense. Well, there was no evidence that explicitly linked Mr. Wozniak-Ragosa to this scheme, was there? Well, I'm not by explicitly linked. The evidence in this case certainly was that Mr. Ragosa, and this is largely according to the testimony of Mr. Williams. Williams, in other words. I think we do have. Williams' credibility was essential here. Williams' credibility was essential. But his credibility was corroborated by the tape in this case, in which there were crucial words that can be heard on this tape that do corroborate what he said. In the appellant's argument, she noted that she argued that it was vague. Who else was on that tape? It was just Mr. Williams and Mr. Ragosa. Two of them? Just the two of them, yes. And probably most critically on that tape, you hear the name Wade being spoken by both Mr. Williams and Mr. Ragosa. Mr. Williams can be heard to pass the name Wade on to Mr. Ragosa, and as Mr. Williams testified, Wade was the name that he was given by the FBI, and the FBI testified to this as well, the name and number Wade, who was an FBI undercover agent who ultimately, once this name was passed along, led to the interception of the drugs from a co-conspirator who was not on trial, Denise Gonzalez. So that's critical information that can be heard on this tape that corroborates what Mr. Williams said. There are references to drugs on the tape. There's a reference to, and this is at the excerpt of Record 71, Mr. Williams asking, you think you can get speed to Mr. Ragosa? And he testified that by speed he meant methamphetamine. Again, as the appellant notes, this wasn't a coded conversation. This was a private conversation that they understood they were, at least Mr. Ragosa understood they were having in the prison, so there was no reason to speak in code. They were speaking about something that, as Mr. Williams testified, they had discussed a number of times, which was this proposed transaction. So this tape, in a number of key respects, does corroborate Mr. Williams' testimony. And then, of course, there's the fact that this name, weight, and number was passed on through the prison system by Mr. Velarde to Denise Gonzalez. That's heard on the tape, and then Denise Gonzalez does end up calling Wade this undercover agent. And all of that corroborates Mr. Williams' testimony in this case. So, yes, Mr. Williams' testimony is critical in this case, but I think the jury had good reason to find him credible because of all of this other corroborating evidence. If there are no further questions, I'll come in on that. Thank you. I just want to ask a question. What is that device there? Oh, that's your... Carrier. Oh, your carrier. Oh. I thought maybe you had a laser pointed at you. Looks like a secret camera. Marshals would have taken it away. Well, I don't know. I'll be very brief. Well, the government contends there's no plausible explanation of how Velarde got Wade's phone number, which he then passed to Denise Gonzalez. It's just as likely as not that it was Williams who gave it to Velarde. Williams was under surveillance. There was no showing he had any contact with Velarde at all. I'm sorry, appellant was under surveillance. There was no showing he had any contact with Velarde. And the references to speed, I believe, were very difficult to hear. Even though Williams was under surveillance and it was recorded, I believe that the officer could not make out what was being said. Much of what was reported by Williams as to what defendants said in that conversation was reported by Williams and not corroborated by anyone else. Appellant received a sentence of 210 months or approximately 18 years for these offenses. Surely his conviction should rest on substantially more than an accomplice's virtually uncorroborated testimony as to what was said. And I would leave the court with... But in the federal system, you don't need corroboration. No, you don't. But if it is inherently incredible, then it should be disbelieved. And I believe in key aspects, and that's discussed in the brief. Mr. Williams' testimony was inherently incredible. First of all, we have the fact he changed his account of what occurred several times. He lied to police. And the jury never heard that. And I do believe that would have made a difference. All right. Thank you.  Thank you, Your Honors. Thank you. All right. We'll come now to the final matter, Dan Joint Venture v. Binnifard.
judges: Pregerson, Tashima, Paez